IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| REX A. PHILLIPS and<br>MARY M. PHILLIPS,<br><br>      Plaintiffs,<br><br>VS.<br><br><br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS INC.,<br>MERSCORP INC., ONE WEST<br>BANK, FSB, LENDER PROCESSING<br>SERVICES, INC.<br><br>      Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>      CASE NUMBER: CV 09-TMP-2507-S |

**FIRST AMENDED COMPLAINT**

**STATEMENT OF THE PARTIES**

    1.    The plaintiffs are each adult residents of Cullman County, Alabama and are each over the age of 19 years.

    2.    The defendant MERS Corp. Inc. is the parent corporation of Mortgage Electronic Registration Systems Inc. (also known as MERS) and is a foreign corporation doing business by agent in Cullman County, Alabama at all times material hereto.

    3.    The defendant Mortgage Electronic Registration Systems Inc. (hereinafter MERS) is a foreign corporation doing business by agent in Cullman County, Alabama at all times material hereto.

    4.    The defendant Lender Processing Services, Inc. (hereinafter, LPS) is a foreign corporation doing business by agent or employee in Cullman County, Alabama.

5. The defendant One West Bank, FSB is a foreign corporation doing business by agent or employee in Cullman County, Alabama at all times material to the allegations of this complaint.

## JURISDICTION & VENUE

6. Jurisdiction and Venue are proper in the Northern District of Alabama based upon the Trial Court's previous ruling denying remand in this matter.

## STATEMENT OF THE FACTS

7. The plaintiffs are owners of certain real estate located at 14285 County Road 222, Crane Hill, Alabama 35053.

8. On or about the 27th day of June 2006 the plaintiffs to this action executed a mortgage loan with Quicken Loans Inc.

9. Unbeknownst to the plaintiffs this mortgage document named a company identified now as the defendant MERS as nominee for Quicken Loans as the mortgagee of record of this mortgage loan.

10. This form is a uniform mortgage instrument which is presented to the plaintiffs for the first time at the closing of their mortgage loan and the uniform mortgage instrument is a classic contract of adhesion presented in a take it or leave it format to the plaintiffs with no choice as to the content of the actual security instrument.

11. MERS identifies itself in its corporate propaganda as an electronic registry which tracks interests in mortgages for companies who become members of MERS.

12. These companies who become members touch the full spectrum of the real estate cycle from origination to foreclosure.

13. Companies who are members of MERS who are also involved in the securitization and sale of mortgage loans in the secondary mortgage market gain substantial savings in the costs of "bundling" loans through the securitization process by the use of the MERS system through the elimination of the recording costs of mortgage assignments associated with the changing of the ownership interest in the mortgage loan according to MERS.

14. MERS is a private corporation with no public recording functions who owns no interest in any mortgage loan and exists merely as the mortgagee of record in the land records for each "MERS as Mortgagee" mortgage loan, which MERS refers to as a "MOM" loan.

15. While MERS holds itself out as the Mortgagee of record in the mortgage instrument, and the universally understood definition of a Mortgagee is that of the person who has loaned money that is to be secured by real estate and who has the right to a lien on that real estate, MERS, in their alternative universe, has another completely separate definition of Mortgagee which governs its relationships with its members. However, MERS and its members continue to use the term "Mortgagee of Record" and argue that MERS as the lien holder has the right to foreclose by intentionally concealing the true nature of its agreements with its members and using the term Mortgagee to imply to Courts and consumers that MERS has an enforceable interest in any mortgage.

16. MERS does not loan any money, MERS does not own any lien, MERS never experiences a default, MERS is not entitled to any payment on any mortgage loan and in fact MERS has testified that if no borrower ever made another payment on any mortgage loan

where MERS was the mortgagee of record that MERS would not lose any money and would not suffer any default or any adverse impact which would affect its business.

17.     Further, in the seminal case of *Landmark Bank v. Kesler,* the Supreme Court of Kansas declared that MERS was nothing more than a straw man having no interest in any mortgage loan.  The *Landmark* court in Kansas declared further that MERS lacked any standing to enforce any mortgage or to foreclose any mortgage.

18.     Further, because of the nature by which MERS and its members structure the loan process the parties list MERS as mortgagee in their mortgage documents but the rights of MERS in the lien are completely independent of any obligation on any mortgage promissory note. Further, MERS has testified in other litigation that they will never experience default on any mortgage promissory note.

19.     The actual substance of the transaction with MERS as mortgagee clearly demonstrates that MERS holds or controls the lien while some other entity owns the promissory note and is entitled to payment thereof.

20.     During the fall 2008 the plaintiffs in this action experienced short-term economic difficulties which caused them to fall behind on their mortgage payments.  The servicer of their loan at that time was an entity known as Indy Mac Federal Bank, FSB.  Indy Mac Federal Bank, FSB is not a party to this action.

21.     Because of the contract for outsource services between Indy Mac Federal Bank and the defendant LPS, when the Phillips loan reached a predetermined state of delinquency as determined by the computerized record systems of the servicer, this loan was referred to LPS for foreclosure proceedings.

22.     LPS then used the name of MERS to fabricate an assignment of mortgage which allegedly transferred and assigned the rights to foreclose from MERS to Indy Mac Federal Bank.

23.     The document executed by LPS and its employees was an utter fabrication and a fraud designed to mislead the court and the plaintiffs into believing that Indy Mac Federal Bank, FSB had the right to foreclose when in fact it had no such right.

24.     When the Phillips consulted their attorney regarding this matter, and the events leading up to the foreclosure was questioned, Indy Mac Federal Bank withdrew their foreclosure proceeding.

25.     After LPS abandoned its foreclosure activity in the name of Indy Mac Federal Bank, FSB there was a period of time of approximately 90 days where the Phillips received no contact and no information regarding their loan or any alleged default on their loan.

26.     The Phillips were contacted on or about September 24, 2009 by an attorney with the firm of Sirote and Permutt by mail through a letter indicating that their property was now being foreclosed by an entity called One West Bank, FSB.

27.     One West Bank, FSB, a defendant herein, claims to have a right to foreclose upon the property of the plaintiffs based upon a subsequent assignment of the same mortgage from MERS to One West Bank.

28.     However, these defendants fail to realize that the assignment from MERS to One West Bank is again unenforceable, illegal, void, a forgery, a perjury, and a slander of the title to the Phillips' property in either of two scenarios, 1) either MERS previously assigned all its right, title and interest to this property to Indy Mac Federal Bank, FSB many months prior to the alleged assignment by MERS to One West Bank, FSB, or 2) the alleged MERS to

OneWest Bank assignment is unenforceable because OneWest is not the owner of the underlying debt instrument and has no right to enforce the instrument.

29.  MERS claims to be an innocuous system which merely allows its members to register the ownership interests in any given mortgage loan.

30.  According to MERS there are three identifiable interests in any given mortgage loan.  The first interest is the beneficial interest in the note, which MERS defines as the right to the payment of the proceeds due under the note.  The undersigned counsel, having a great deal of familiarity with MERS, and being involved in litigation with MERS throughout the state in numerous cases, deposed the CEO of MERS September 25, 2009.  The CEO of MERS is a gentleman named R.K. Arnold.  Mr. Arnold claims credit for being one of the persons to have designed and conceived the MERS system.  He explained in his deposition testimony that the beneficial ownership of the note was the person ultimately entitled to receive the proceeds of payment.  The rest of the world would equate that statement to ownership of the promissory note.  However, in "MERSian", the beneficial ownership of the note is simply the party who is ultimately entitled to payment.  In "MERSian" the beneficial ownership is not the equivalent of total ownership at least as expressed by Mr. Arnold in his deposition.  The second interest which MERS recognizes in a loan is the servicing interest or the right to service a mortgage loan.  MERS freely acknowledges that this is a contract right and has nothing to do with the mortgage or promissory note between the borrower and the lender.  MERS understands that the right to service a mortgage loan is a contractual agreement between a mortgage servicer and the owners of the promissory notes for which the servicers collect and administer payments.  The last interest which MERS recognizes in a mortgage loan is the mortgagee interest.

31. The defendant MERS has taken multiple positions across the country with respect to the actual definition of the mortgagee interest. As recently as this year MERS took the position in the State of Minnesota that they were the owner of the lien. In 2006 when testifying under oath Mr. Arnold also testified that MERS was the owner of the lien. Apparently somewhere along the way MERS realized that it was impossible in most states of this country for one entity to own the lien and another entity to own the promissory note. This is based on the historic doctrine set out by the Supreme Court in a case called *Carpenter v. Longan* which the State of Alabama follows for the premise that if a mortgage note is separated from a mortgage lien the lien itself is unenforceable even though the debt is valid.

32. After apparently realizing that there is a problem with the train of legal reasoning which underpins the business model of MERS. Mr. Arnold has chosen to obfuscate the definition of ownership of the lien into a claim that MERS simply sits in the land records as mortgagee of record but that "ownership of the lien is something that he can't define".

33. MERS does admit that the promissory notes (allegedly secured by a MERS lien on the real estate made the basis of the loan transaction) are sold many, many times and that there are no assignments of mortgage filed in the land records indicating a transfer of ownership contemporaneous to the transfer of the ownership of the debt instrument, or promissory note. MERS defines this as "freezing the lien".

34. Mr. Arnold contends that this is because no entity who has ever purchased a mortgage loan has ever filed a mortgage assignment for the purpose of notifying the world through the public land records by use of the recording system that there had been a change in the ownership of the debt secured by the mortgage.

35. Instead, Mr. Arnold believes that mortgage assignments were always filed to indicate changes in the servicing rights of a particular mortgage loan.

36. Nevertheless, in this case MERS assigned all of its interests in this loan to Indy Mac Federal Bank, FSB prior to the attempts by One West Bank FSB to foreclose allegedly in reliance upon an assignment from MERS.

37. It is quite illogical to believe that MERS could assign all of its interest in 2008 to Indy Mac Bank, FSB but then have the right to assign that same interest to One West Bank, FSB in May of 2009. Both of the assignments are actually unenforceable as neither One West Bank nor Indy Mac Bank are the owners of the promissory note nor were they when the mortgage assignments were executed. Nor do either of the parties have the right to enforce the promissory note nor do they have the right to foreclose on the Phillips in this case.

38. Notwithstanding the fact that none of these entities have the right to foreclose and that the actions being taken by Sirote and Permutt are being taken at the direction of the defendant LPS and that MERS is allowing the defendant LPS to use its name to fabricate and forge documents in an attempt to steal the property of the Phillips, these parties press on with their attempts to take the Phillips' property through the use of a foreclosure sale which none of these parties have the right to exercise.

39. In fact, under controlling Alabama law it is questionable whether any MERS lien is enforceable as to any property in the State of Alabama based on MERS' own testimony with respect to its rights and responsibilities in the MERS as mortgagee setting.

40. While these parties may have wished to make a mortgage loan it is questionable as to whether or not there is a valid lien on this property.

41. Further, even if there is not a valid lien it does not relieve the plaintiffs of their obligation under the debt, it merely means that the true owner of the debt, if they have done equity, might be entitled to an equitable mortgage, but the true owner of the debt would have to step forward and prove entitlement to an equitable mortgage under controlling law.

42. What is abundantly clear from the facts of this case are that the defendants sued in this lawsuit are attempting to steal the home of the Phillips when they have no underlying right to be involved in any foreclosure or to attempt to enforce any debt in this case.

43. As one might expect, the actions of these defendants have resulted in a great deal of anxiety, stress, mental anguish, and other frustrations and injuries which one might expect a person to suffer when they are in fear of losing their home to someone that has no right to take their home.

44. Because of these actions, and because these actions by these defendants are illegal, the Phillips have been injured and damaged and claim all damages allowable under the law.

### **AFFIRMATIVE DEFENSES TO THE UNDERLYING FORECLOSURE ACTION**

45. The plaintiffs allege that acceleration was improper and in violation of the parties contract.

46. The plaintiffs allege that the defendant servicer failed to offer a modification agreement which would have cured any alleged default and would have been an absolute defense to foreclosure as required by their acceptance of federal bailout funds pursuant to HAMP, TARP and guidance from the Treasury Department.

47.     The plaintiffs allege that the defendants failed to comply with applicable mortgage servicing regulations, guidelines and agreements and as such a condition precedent to acceleration and foreclosure has been violated requiring the dismissal of the underlying foreclosure action.

48.     The plaintiffs allege that the servicer of the loan failed to offer pre-foreclosure loss mitigation as required by the agreements between the trustee and the servicer.  This document is called a Pooling and Servicing Agreement or a PSA, in industry parlance, which requires that the servicer take certain actions to prevent foreclosure before acceleration of the loan and foreclosure.  This failure requires that the underlying action seeking foreclosure be dismissed or abated until such time as the servicer complies with these requirements.

49.     The plaintiffs allege that none of these defendants have standing to initiate a foreclosure action.  As grounds therefore, the plaintiffs are willing to provide at an evidentiary hearing, proof of said lack of standing to foreclose.

50.     The mortgage assignment portending to transfer the mortgage to the foreclosing entity is void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable as a matter of law.

## COUNT ONE

### Slander of Title

51.     The plaintiffs reallege all prior paragraphs as if set out here in full.

52. The defendants in fabricating mortgage assignments and instituting foreclosure proceedings illegally have caused a cloud to be placed on the title of the property of the plaintiffs.

53. As the proximate result of this slander of title the plaintiffs have suffered injuries and damages.

54. As a result thereof the plaintiffs claim all damages allowable under the law.

## COUNT TWO

### Trespass

55. The plaintiffs reallege all prior paragraphs as if set out here in full.

56. The actions of the defendants constitute a trespass against the plaintiffs and their right to the quiet enjoyment and peaceful possession of their property.

57. As a proximate result of said trespass by the defendants, the plaintiffs' have been deprived of the quiet enjoyment and peaceful possession of their property.

58. The actions of the defendants are willful and oppressive.

59. As a result of these actions the plaintiffs have been injured and damaged.

60. As a result the defendants are liable for all natural, proximate and consequential damages due to their actions as well as punitive damages upon a proper evidentiary showing.

61. The Plaintiffs claim all damages allowable under the law for these injuries.

## COUNT THREE

### Negligent or Wanton Hiring, Supervision, Training or Retention

62. The Plaintiffs reallege all prior paragraphs as if set out here in full.

63. The Defendant OneWest Bank, FSB in this action negligently or wantonly hired, trained, supervised or retained the defendant, LPS.

64.     As a result of this negligence or wantonness, depending on evidence adduced, the Plaintiffs were injured and damaged by the actions of LPS.

65.     As a result, One West Bank, FSB is liable for all damages proximately and directly flowing from these actions by their agent, employee or servant, LPS.

66.     The Plaintiffs claim all damages allowable under the law for these injuries.

## COUNT FOUR

### Unjust Enrichment

67.     The plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

68.     The actions of the defendants in engaging in efforts to deprive the plaintiffs of their property through fraud and the use of fraudulent and forged documents resulted in the defendants being unjustly enriched.

69.     As a result of the defendants' unjust enrichment, the plaintiffs have been injured and damaged resulting in financial and emotional damages including mental anguish.

70.     The plaintiff claims all damages allowable under law as a result of the defendants' wrongful conduct and unjust enrichment.

## COUNT FIVE

### CIVIL CONSPIRACY

71.     Plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

72.     The defendants engaged in an unlawful combination and conspiracy to service mortgage loans which they treated as either in default or not in default in such a manner as would generate to the defendants illegal fees and charges.

73.     This practiced resulted in improper and undeserved payments for those fees and charges added to the accounts of unsuspecting borrowers including the plaintiffs and the collection of those sums and distribution of those sums to the members of the conspiracy.

74.     As a result of this civil conspiracy, civil wrongs were committed against the Plaintiffs and other consumers in the form acts which were negligent, wanton, illegal, fraudulent, unfair and deceptive.

75.     The motivation for the civil conspiracy was the defendants' greed for the payment of fees, charges, and other forms of payments and monies to which the defendants were not entitled to by law, equity or any other reason..

76.     Further, the members of this conspiracy are engaged in conduct which leads to foreclosure actions against unsuspecting borrowers, including the plaintiffs, in violation of law in that the defendants lack any legal standing or right to foreclose on the plaintiffs and they either attempt to do so or do so in violation of law.

77.     The purpose of these actions is to generate additional fees and to allow the various members of the conspiracy to receive payment of various forms of insurance, credits and reimbursements which are available to them based upon the various forms of insurance and collateralization including monoline insurance, credit swaps, overcollateralization pools, and other forms and types of insurance and payment guarantees involved in private label

securitizations in the secondary mortgage market for which the members of the conspiracy are acting, are parties to and are involved with.

78.     As a result of the civil conspiracy the plaintiffs were caused to be injured by the acts of the members of the conspiracy which include the wrongful foreclosure on the plaintiffs' property.

79.     The Plaintiffs were injured and damaged as a result of this conduct and claim all damages allowed by law.

## COUNT SIX

### WANTONNESS

80.     The plaintiffs reallege all prior paragraphs as if set out here in full.

81.     The defendants engaged in wanton conduct in that the defendants consciously took actions including the production of fraudulent and forged documents affecting interests in real estate, misrepresented their rights to foreclose, consciously and deliberately engaged in conduct designed to confuse and mislead the plaintiffs, claimed legal rights which they lacked and otherwise acted with malice to obtain possession of the property of the plaintiffs for the purpose of garnering to themselves the payments of fees and other compensation.

82.     The actions of the defendants were taken with reckless indifference to the consequences to the plaintiffs, knowing full well that the defendants' actions would produce injury and harm to the plaintiffs.

83.     The defendants knew that these actions were likely to result in injury to the plaintiffs including financial and emotional injuries and mental anguish.

84.     As a proximate result of the defendants' wantonness the plaintiffs were injured and harmed and suffered financial injury and emotional damages and the plaintiffs claim all damages allowed by law for those injuries.

**WHEREFORE,** the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A. That the Plaintiffs have and recover against the Defendants a sum to be determined by a jury of actual damages;

B. That the Plaintiffs have and recover against the Defendants a sum to be determined by a jury of punitive damages;

C. That the Plaintiffs have such other and further relief as the Court may deem just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a trial by struck jury on all claims so triable before the Court.

*/s/ Nick Wooten*
Of Counsel

**OF COUNSEL:**

Wooten Law Firm, P.C.
P.O. 3389
Auburn, Al. 36831
(334) 246- 4409
Fax: (334) 821-7720
nhwooten@gmail.com

Rhonda Steadman Hood
STIRLING & HOOD, LLC
1117 22nd Street South, Ste. 101
Birmingham, AL 35205
(205) 323-4123
Fax: (205) 776-2040
attyhood@bellsouth.net

## CERTIFICATE OF SERVICE

      I hereby certify that on September 24, 2010 I electronically filed the foregoing with the Clerk of Court, using the EM/ECF system which will send notification of such filing to registered persons and that any person not registered with EM/ECF system via US Mail postage prepaid.

                                        */s/ Nick Wooten*

                                        Of Counsel